Deaderick, J.,
delivered the opinion of the court.
The question in this case is, whether the railroad company will be responsible in damages to an employe who was injured in the performance of his duty, in oiling the engine, which did not have a lubricator, -or pipes running from the cab for the purpose of oiling the machinery. Such attachments, of comparative recent invention, obviate the necessity of going out upon the engine to oil it, and, therefore, render the operation of oiling safe; whereas,, some hazard is incurred in the former practice of going upon the engine while it is in motion, and applying the oil. The engine from which Hodge fell and received his injury, had, at one time, a lubricator attached, hut for some reason it had been removed and -disused for some time previous to the sustaining of the injury by Hodge.
The sole grounds upon which the defendant in error claims that he is entitled to damages for the injury re *435 eeived, is that the railroad company had not provided such attachments to the engine as would have rendered it unnecessary to go upon it to oil it, and that it had not provided all the securities against accident which might have been provided. The charge of the court, and his refusal to charge as requested, raise- the question as to the nature and extent of the railroad company’s liability. ITodge- was a fireman, and his duty was-, among other things, to- oil the engine at stated times, while it ivas in motion. In doing this, and stepping from the steam chest to the bumper, his foot slipped, and he fell off, and his arm was run over by the engine, and had to be amputated.
He had been engaged on this particular engine about two months, in the same service, -and had oiled it many time before without accident. There was proof tending to show that he could have taken two steps instead of one between the chest and bumper, which were -about four feet apart, and that it would have been safer to have done so. There was also proof as to the practicability of his catching hold with his hands of a bracket before making the step. There is no charge or evidence of unskillfulness or negligence of the engineer, or other defect of the machinery than as above stated. Defendant below requested the court to charge the jury that plaintiff could not recover for an injury received by reason of defendant’s omission to provide other, more convenient, and 1-ess dangerous means for oiling the engine than that provided for the engine in question.
The second proposition is, that if the -injury occurred because a more convenient and safer mode of oiling the engine had not been provided, and for want thereof, plaintiff had to go out upon said engine to oil it, yet, if he knew said engine had not been so provided, and with such knowledge voluntarily undertook and agreed to- perform such service, and sustained the injury while so doing, he could not recover.
*436 The above is the substance of other requests made to the court. The court left it to the jury to determine whether the failure of defendant- t-o provide a more convenient and safe mode of oiling said engine, or the negligence of plaintiff in undertaking to oil the engine in that condition, was the prime and efficient cause of the injury, with the instruction that if the negligence of the defendant, in not providing the better, more convenient and safer mode of oiling, the engine was the prime and efficient cause of the injury, the jury should find for him, though he was in some fault. This charge was given without instructions to the jury that negligence on t-he part of the plaintiff might always be looked to in mitigation of damage.
In another part of his charge, the court instructed the jury that if the plaintiff, in view of the hazards to which he would be exposed, voluntarily engages to serve, he undertakes to run all the ordinary risks of the service — 'and then follows the further instructions, that it was the duty of defendants to s.ea to- it that their engines were constructed according to the latest models, where such models have been tested, have been proved better and safer than the older ones, and are reasonably easy of adoption, and a failure to do1 so would be culpable negligence.
Taking these several parts of the charge, we are of opinion the circuit judge meant and was understood by the jury to mean, that if the safer and better means of oiling had not been adopted, and plaintiff was injured in the act of applying the oil, in the less safe mode, notwithstanding he had contracted so to serve with full knowledge of all the facts, that the defendant would be liable m damages for the injury sustained by the plaintiff.
In Wharton on N egligence, 123, it is said that no right of action exists against an emloyer for an injury to an employe, resulting from the use of works or machinery less safe than others that might be adopted, when the employe knows all the facts, and is as well acquainted as the master *437 with the nature of the machinery, and. voluntarily uses it. See also pages 12’4, 125, 126. When a servant enters upon an employment necessarily hazardous, he accepts the risks incident to such service, and if with knowledge of the facts, he accepts employment on machinery defective from its construction, or for the want of proper repair, he cannot recover damages for any injury within the scope of the danger which both the contracting parties contemplated as incident to the employment. Wharton on Negligence, sec. 211. Pierce’s Railroad Law, 296-7.
“And the employer is not bound to change his machinery, and he may use a machine, or appliance for its operation, shown to be less safe than another in use, without being liable to his servants for the non-adoption of the improvement, if the seorvant be not deceived ‘as to the degree of danger that he incurs.” Ibid., sec. 213-14. Sher. & Red. on Neg., sec. 94.
These are the rules of law prevailing, as we understand, between railway companies and their employes, differing in many respects from those between such companies and passengers upon their trains. The cases of the Nashville & Chattanooga Railroad Co. v. Elliott, 1 Cold., 611, and Jones v. Nashville & Decatur Railroad Co. [Railroad v. Jones, 9 Heis. 27], are supposed to be in conflict with the authorities above cited. In the first named case, the defect in the engine which caused the injury consisted in its unsuitableness to the special service in which it was employed, and this defect does not seem to have been known to the party injured.
In the second case, where the injury resulted from the bursting of a boiler attached to the engine, this court held that if the defects of the boiler were of a character which might have been discovered by the company, by proper care and skill and by the application of the ordinary and approved tests, they would be liable for injury rer suiting from the explosion, buit if such defects could not *438 be discovered by the use of such tests, the company would not be liable. MS., Nashville, December term, 1872.
In the case last named, it appears that the court instructed the jury, that “if the accident happened as the consequence of the carelessness or imprudence of deceased, or from his unauthorized intermeddling with the safety valve, or was the result of the conjoined carelessness of the deceased and the defendant, or its agents, then the plaintiff cannot recover.”
It was objected to by the defendant that this was error, because the circuit judge did not add to this construction, that “if the accident happened as the result of the carelessness of the deceased, conjoined with the defective character of the boiler, the plaintiff could not recover.”
To which this court replied, “that no such additional instruction was requested, and, therefore, if the instruction asked had been proper, the judge cannot now be put in error.”
But the instruction, if requested, could not have been properly given unless it had contained the qualification that the deceased must have known of the defective character of the boiler.” The implication is, that if the deceased had had such knowledge, plaintiff could not have recovered. The circuit judge also instructed the jury, in the last named case: “If the defects in the boiler were known to the deceased, and he accepted service, or continued in the same ou said engine, with full knowledge of such defects, the plaintiff could not recover.” It was insisted by defendant that the judge should have stated to the jury, “that if deceased had equal means of knowledge with the defendant to have discovered the defects that he could not recover.” But the court held it was not error. The court was not requested'so to charge — and that was sufficient answer to the objection — and the charge as given was inferentially approved.
*439 There is then no conflict between these two eases of our own court, and the authorities before cited.
There was no inherent or concealed defect in the engine from which the defendant in error fell. The accident was not the result of any imperfection of machinery which was unknown to him. The want of the oiling tube, and the means provided for going out upon the engine, were apparent and well known to him. We' are of opinion, therefore, that there is error in the record and in the charge of the court, and the judgment must -be reversed.